UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

- against -

TERESA LOZANO VALOYES a/k/a SONIA
MALDONADO

Defendant.
-----------------------------------------------------------X

**OPINION**

10-cr-298 (ENV)

**VITALIANO, D.J.**

On July 16, 2010, defendant Teresa Lozano Valoyes ("Lozano") pled guilty to one count of illegal reentry, in violation of 8 U.S.C. § 1326. On March 15, 2011, the United States Probation Office prepared a Presentence Report ("PSR") that calculated her sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") at 77 to 96 months' imprisonment. Probation derived this calculation from its computation of Lozano's total offense level at 21 and its determination that she was chargeable with 16 criminal history points, placing her in criminal history category VI.

On April 1, 2011, defendant's counsel wrote the Court to object to the PSR's calculation of defendant's criminal history category. Counsel argued that the PSR erred in concluding that being "found in" the United States as an illegal alien in violation of 8 U.S.C. § 1326 is a continuing offense that begins when the alien illegally enters the country and ends when he or she is "found" by law enforcement. Rather, counsel argued, the offense should be construed, for Guidelines purposes, as taking place only on the discovery date. Here, instead of beginning on March 28, 2005—when defendant illegally re-entered the United States—and ending on April 1, 2010—when defendant was arrested, defendant's offense should be construed as having taken place only on April 1, 2010.

1

If the Guidelines calculation followed defendant's formula, Lozano's criminal history category would have been calculated at IV, not VI. Under this approach, two of defendant's prior narcotics convictions, in 1990 and 1991, would have been beyond the 15 year reach of U.S.S.G. § 4A1.2(e)(1), and six criminal history points would have been dropped from the equation. A third narcotics conviction, for which defendant received a conditional discharge in 1997, similarly would have been beyond the 10 year reach of U.S.S.G. § 4A1.2(e)(2), jettisoning another criminal history point. Finally, because the instant offense would not have taken place while defendant was on state parole supervision or federal supervised release, two points that the PSR added pursuant to U.S.S.G. § 4A1.1(d) would not be included. Calculated in line with the defense's analytical framework, Lozano's sentencing range would be 57 to 71 months (offense level 21, criminal history category IV), not 77 to 96 months.

The Second Circuit has never addressed, in the context of calculating a defendant's criminal history under the Guidelines, whether being "found in" the United States illegally in violation of § 1326 is a continuing offense. However, in the related context of determining when the statute of limitations clock begins to run for such a violation, the Circuit has held repeatedly that the offense begins when the alien illegally enters the country but continues until he or she is "found." That is, the limitations clock does not begin to run until discovery, since the crime is "continuing" until then. *See United States v. Morgan*, 380 F.3d 698, 703-04 (2d Cir. 2004); *United States v. Acevedo*, 229 F.3d 350, 355 (2d Cir. 2000); *United States v. Rivera-Ventura*, 72 F.3d 277, 281-82 (2d Cir. 1995). *But see United States v. Caminero*, 5 F. App'x 91, 93 (2d Cir. 2001) ("For sentencing purposes, the date the offense was committed is considered to be the date the defendant was found, not the date the defendant reentered the United States illegally."); *United States v. Gomez*, No. 98-1405, 1999 WL 177245, at *1 (2d Cir. Mar. 29, 1999) (finding that 2-point enhancement under U.S.S.G. § 4A1.1(e) for committing an offence within two years

of serving a prior sentence of at least 60 days "applies if the date when the defendant is 'found in' the United States comes within two years after a qualifying term of imprisonment").[1] Moreover, in *Morgan*, the Second Circuit cited with approval *United States v. Lopez-Flores*, 275 F.3d 661 (7th Cir. 2001), in which the Seventh Circuit held, in the context of calculating appellant's criminal history under the Guidelines, that the offense "'is first committed at the time of the re-entry and continues to the time when the defendant is arrested for the offense.'" *Morgan*, 380 F.3d at 703 (quoting *Lopez-Flores*, 275 F.3d at 663).[2]

Crafting its pigeonholes through the delicate, and oft controversial, balancing of competing concerns and objectives, the Guidelines rely on a myriad of sub-computations anchored in various dates or events. Relevant here are those that provide that "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years *of the defendant's commencement of the instant offense* is counted" in the criminal history calculation, as is "[a]ny other prior sentence that was imposed within ten years *of the defendant's commencement of the instant offense.*" *See* U.S.S.G. § 4A1.2(e)(1), (2) (emphasis added). With years on the run intervening, the significance of defining the start date for Guidelines purposes in Lozano's case is enormous. Applying the answer that has been provided by the Second Circuit

---

[1] Although the Court is in rhythm with both the *Caminero* and *Gomez* decisions, they are of highly dubious precedential value. *See* note 2, *infra*, and accompanying text.

[2] In reaching this conclusion, the Seventh Circuit is in line with every other circuit court, save the First. *See, e.g., United States v. Jimenez*, 605 F.3d 415, 422 (6th Cir. 2010), *abrogated on other grounds by Tapia v. United States*, 131 S. Ct. 2382 (2011); *United States v. Hernandez-Gonzalez*, 495 F.3d 55, 59-61 (3d Cir. 2007); *United States v. Alba-Esqueda*, 457 F.3d 859, 860-61 (8th Cir. 2006); *United States v. Sotelo*, 177 F. App'x 366, 368 (4th Cir. 2006); *United States v. Ruiz-Gea*, 340 F.3d 1181, 1189 (10th Cir. 2003); *United States v. Mendez-Cruz*, 329 F.3d 885, 889 (D.C. Cir. 2003); *United States v. Reyes-Pacheco*, 248 F.3d 942, 946 (9th Cir. 2001); *United States v. Castrillon-Gonzalez*, 77 F.3d 403, 406 (11th Cir. 1996); *United States v. Santana-Castellano*, 74 F.3d 593, 597-98 (5th Cir. 1996). *But see United States v. Cuevas*, 75 F.3d 778, 784 (1st Cir. 1996) (holding that "even though defendant illegally reentered the United States in 1990, he committed his § 1326(a) offense in 1995, when he was 'found'"); *accord United States v. DeLeon*, 444 F.3d 41, 52 (1st Cir. 2006) ("Where an alien is indicted under the 'found in' prong [of 8 U.S.C. § 1326] . . . the alien is deemed to have committed the offense at the moment he was 'found.'") (internal citation and quotation marks omitted).

3

in other contexts, and notwithstanding the statutory prescription that the crime is not complete until the alien is "found," the offense is deemed to "commence" on the date of illegal entry. *See Morgan*, 380 F.3d at 703-04; *Acevedo*, 229 F.3d at 355; *Rivera-Ventura*, 72 F.3d at 281-82. These precedents, obviously binding on the Court, are transparent in their aim to save (as Congress intended) illegal reentry prosecutions from the limitations clock. In cases like Lozano's, the real crime, of course, is the illegal reentry. It is complete the moment the illegal alien sets foot on American soil. By consequence, the limitations clock ordinarily would begin to run on reentry, but this would spare the shadowy alien who managed to evade timely discovery: hence the added clause about being "found in" the country, which keeps the clock from ticking. At the same time, however, the legislative legerdemain stands the concept of recency and repose embedded in criminal history computations on its head.

An illustration is in order. With no statute of limitations to bar prosecution on the front end, an illegally reentered alien who apparently has not had a single brush with the law, say, for a quarter century, still would be accountable under the Guidelines at the back end, upon being apprehended and (inevitably) convicted, for crimes committed almost 40 years before being "found." Specifically, extrapolating in Lozano's case, if Lozano had been arrested in the year 2041, at the age of 90 (the age of the oldest judge currently serving in this district), her three prior convictions in 1997, 1991, and 1990—44, 50, and 51 years earlier, respectively—still would be held against her for Guidelines purposes. That is because these convictions would be deemed imposed within the time limits set out by the Guidelines for including prior offenses in the criminal history calculation, which run from the "commencement of the instant offense"— the illegal reentry. U.S.S.G. § 4A1.2(e)(1), (2). But, at the same time, were the Court to treat the offense of being "found" in the United States illegally as occurring only on the date of discovery for the purpose of the Guidelines, in order to ameliorate this impact, it would create a strange

4

inconsistency with the Second Circuit precedent regarding calculation of the applicable statute of limitations. The Court can see no acceptable interpretive justification for the distinction, particularly given the Second Circuit's approving citation in *Morgan* to the Seventh Circuit's *Lopez-Flores* decision. *See* 380 F.3d at 703.

Bound by circuit precedent, the Court was obligated to reject Lozano's counter-proposed Guidelines calculation, even though the PSR's precedent-compliant calculation seems to undermine the principle of repose that animates the Guidelines' criminal history categorization. Because of the limitations-tolling quirk in the statutory language establishing the subject crime, putting otherwise crime-free distance between a "new" offense and a criminal past does not trigger the repose benefit that the Guidelines' criminal history policy was designed to give. Arguably, the Guidelines' recommended punishment, viewed through a humanistic lens, is even harsher on the now older offender. The Guidelines' calculation for an offender like Lozano leads to a more severe punishment based merely on the length of her time in the United States, as opposed to the illegal reentry intended to be punished in the first place. Worse yet, it was time Lozano used—as the government candidly concedes—to play a very positive role in her community.

Fortunately, post-*United States v. Booker*, 543 U.S. 220 (2005), the Court has the discretion to depart from the sentencing range established by the Guidelines, and did so here. But in compliance with its obligation to adopt an offense level and criminal history computation, the Court was obliged to conclude, as the PSR recommended, that defendant's offense of conviction commenced on March 28, 2005 and ended April 1, 2010,[3] placing her at a total adjusted offense level of 21 and in criminal history category VI. This result was less than

---

[3] At the sentencing hearing, defendant's counsel also objected that there was insufficient evidence referenced in the PSR to demonstrate that defendant had illegally entered the United States on March 28, 2005, or that this was her latest illegal reentry. The Court found that a preponderance of the evidence established that defendant's last entry into the United States was on this date.

5

satisfying, which prompts the penning of this Opinion, to amplify the Court's findings and determinations reached at the sentencing hearing.

The Court calls special attention to a model that might afford an avenue for relief. The United States Sentencing Commission has promulgated a Guidelines Application Note directing that a defendant convicted for participating in the criminal offense of conspiracy shall not be held accountable for Guidelines' purposes for a criminal act of the conspiracy committed prior to that defendant's entering into the "continuing" criminal conduct. U.S. Sentencing Guidelines Manual § 1B1.3 cmt n.2. The Court recommends that the Sentencing Commission consider adopting a similar Application Note directing, for Guidelines purposes, that the date of discovery in illegal reentry cases be used for purposes of calculating the illegally reentered alien's criminal history category. Doing so would certainly be in harmony with the twin concepts of recency and repose that are part and parcel of criminal history categorization, especially given that the statutory language already strips away the repose that the statute of limitations could offer. In illegal reentry cases where life in the shadows has been crime-free, the more humane approach suggested would facilitate the calculation of a reasonable sentencing guideline and the imposition of a correspondingly fair sentence, which in turn would promote respect for the law, deter future criminal conduct, and provide for a penalty no greater than necessary to accomplish these objectives.

DATED: Brooklyn, New York
July 14, 2011

s/ENV

_____
ERIC N. VITALIANO
United States District Judge

6